IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ERIC HAMILTON,  )  | |
| )  | |
| Plaintiff,  )  | |
| )  | |
| v.  )  | |
| )  | |
| COMWEB TECHNOLOGY GROUP, INC.,  )  | Civil Action No. 02-CV-2438 (MJG) |
| PLACEWARE, INC.,  )  | |
| WEBEX COMMUNICATIONS, INC.,  )  | |
| FIRST VIRTUAL COMMUNICATIONS, INC.,  )  | |
| SMART TECHNOLOGIES, INC.,  )  | |
| TERAGLOBAL COMMUNICATIONS CORP.,  )  | |
| CENTRA SOFTWARE, INC.,  )  | |
| WEBWISDOM.COM, INC.,  )  | |
| )  | |
| Defendants.  )  | |

## SURREPLY DECLARATION OF MAREK PODGORNY, PH.D.

Marek Podgorny declares, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am the President and Chief Executive Officer of WebWisdom.com, Inc. I have read plaintiff's supplemental submission to the Court dated February 14, 2003, and I make this Declaration in further support of WebWisdom's motion to dismiss for lack of personal jurisdiction over WebWisdom in Maryland.

2.      WebWisdom's corporate website is at www.webwisdom.com. As stated in my previous declaration, there is no whiteboard functionality in any demo or download available on WebWisdom's website. That is true. Nothing in plaintiff's supplemental submission shows otherwise.

3.      Plaintiff's supplemental submission concerns NASA's AIDE website, which is found at http://ret.webwisdom.com:81/aide.html (the "AIDE website"). A link to that website can be found on a third level page of WebWisdom's website, but the AIDE website is not WebWisdom's corporate website. It is an AIDE project website.

4.      Nothing on the page of WebWisdom's website that contains the link to NASA's AIDE website suggests that the link will provide access to any products or downloads. Moreover, our records show that the third level page of WebWisdom's website on which the link to the AIDE website is found is itself visited by only 3.6% of visitors to WebWisdom's website.

5.      WebWisdom built the AIDE website to support the NASA sponsored AIDE project at Syracuse and Cornell universities in academic year 2001/2002. At present, the site is maintained as a pro-bono service to the Hierarchical Learning Network ("HLN") project. The HLN project is sponsored by NASA and coordinated by Old Dominion University. HLN members are academic institutions that include MIT, the University of Illinois, North Carolina State University, Cornell, Syracuse University, and the University of Florida. To my knowledge, no academic institutions in Maryland are HLN members.

6.      As clearly seen from the site content, no product is being marketed, and no offer to sell anything is made on the AIDE website. The AIDE website is a private website intended for use only by academics and NASA. It is purely a research website without any commercial overtones or activity. As stated on the AIDE website:

> AIDE has been built using research funding provided by NASA.
> AIDE technical team wishes to acknowledge NASA's support. In
> recognition of this support, AIDE portal is being made available at
> no charge to all academic and NASA users.

7.      As seen from the website's URL, the site runs on a server not using the "www" designation and uses a non-standard port number (81). These steps have been taken to

2

865605.1

ensure minimal exposure to search engines so that the private nature of the site can be maintained.

8.    The AIDE site does offer a download of certain software code. The code available for download is not a commercially available product. It is not a component of any product currently marketed by WebWisdom. It is a previous generation technology that we have replaced in our commercial offering with a new set of components.

9.    Moreover, this download is not a stand alone application; the code does nothing by itself and cannot even be started on a user's computer. (It therefore infringes nothing.) To activate the downloaded software functions, the user must first connect to the AIDE server (i.e., the AIDE portal). Additional code present on the server is required to activate the downloaded software. Only the combination of the downloaded code with the code on the server provides any kind of useful functionality.

10.    In this manner, access to the technology available through the AIDE website is restricted, because access to the server is user ID and password protected. The potential user must explicitly contact us via e-mail or phone to obtain an account. Therefore, access to the server side code is strictly controlled, and thereby so is access to any collaborative functionality that might be available when the downloaded software is activated.

11.    There is one limited exception to this access control. Buried in a general help file on the AIDE website there is information about a "guest" account. However, the guest account has one fundamental restriction: only one user with a guest account can be connected to the system at any given time. The "guest" user can start potential collaboration tools such as chat, whiteboard, or videoconferencing, but only in the single user mode. Therefore, no two "guest" users can ever enter into any kind of real-time collaboration. This single user "guest"

865605.1

access is merely an opportunity for a potential registrant to "kick the tires" before engaging in the account request procedure. In other words, the "guest" procedure does not provide collaborative functionality.[1]

       12.     The points stated thus far in this declaration are illustrated by the screen movies provided on the CD-ROM attached hereto as **Exhibit A**. The movie file "1_private_site.exe" documents the private nature of the AIDE website. The movie file "2_no_collaboration.exe" explains in detail the on-line meeting setup process and shows that no real time collaboration of any kind is supported for "guest" users of the AIDE portal.

       13.     Plaintiff (or his attorney) accessed a guest account on the AIDE website. As a result, plaintiff's video submission does not show him collaborating with anyone. It does not show his whiteboard drawing being transmitted to any other user at any other location. For that reason alone, plaintiff's patent is not implicated by plaintiff's video exhibit. Plaintiff's own claim construction states:

> The display of information is . . . virtually simultaneous. . . . The information can be transmitted and displayed: after a set time delay such as updating every second; after the completion of a drawing stroke; or after entry of a segment of a drawing, such as each pixel or a group of pixels.

See Plaintiff's proposed claim construction statement, served on January 7, 2003, and attached hereto as **Exhibit B**.

       14.     As part of its academic endeavor, WebWisdom has maintained complete and detailed logs of activity on the AIDE website. We know precisely how and by whom the website has been accessed since its publication on July 22, 2002. Our logs show that (1) the

---

[1] A "guest" user could, theoretically, enter an ongoing collaborative session (if permitted) with a registered user, but such access is controlled as well because the registered user would be immediately aware of the presence of the uninvited "guest." Based on our records, such an event has never happened.

865605.1

AIDE website is almost exclusively being accessed by its intended private audience of academics and NASA users, with public access virtually non-existent; (2) no Maryland resident ever requested or obtained access rights to the AIDE server; and (3) no Maryland resident has ever downloaded software or accessed any functionality available through the AIDE website, with the possible exception of the Court, who downloaded software but did not access the server. (Our logs show that plaintiff's access was made from a computer in McLean, Virginia.)

15.     **Exhibit C** lists all visits to the AIDE website since its publication on July 22, 2002, regardless of whether the person visiting the site downloaded any software, or connected to the AIDE server (i.e., portal) and engaged in any collaboration. As shown, the AIDE website has been visited 137 times using a browser and 24 times by search engine agents. Of those visits, 110 were by authorized users or our business associates and partners. There were 13 accesses that we cannot attribute to any registered user.   None of the accesses in these two categories were from Maryland. (See Ex. C). Finally, there were 14 accesses related to this lawsuit: 12 by plaintiff (or his counsel) who was accessing the site from McLean, Virginia, one by our own counsel, and one by the Court. (See Ex. C).

16.     **Exhibit D** lists all software downloads from the AIDE website. As stated above, the download software is of no use without connecting to the AIDE portal (i.e., the AIDE server). Nevertheless, we provide this list of all downloads from the site. As shown, the majority of downloads (29) have been by authorized (i.e., registered) users. None of these users were located in Maryland. Of the 6 downloads not attributable to authorized users, 3 were by search engines/harvesters, one was by a guest user in Cleveland, Ohio, one was by the plaintiff in McLean, Virginia, and one was by the Court. There is no indication that any download, except perhaps the Court's, was done from Maryland.

865605.1

17.    As stated above, to activate the downloaded software one must login to the AIDE portal. Since users may login to the portal without having downloaded the software, some portal logins may not result in activation of any downloaded collaboration software. Nonetheless, **Exhibit E** lists all unique (i.e., possible multiple logins by the same user are listed only once) logins and login attempts to date. As can be seen, the majority of logins (34) were made by authorized users, none of whom were in Maryland. Only 4 logins were by unauthorized or unidentified users. Of those 4, two were unsuccessful and never actually logged in.[2] One of the remaining 2 is the plaintiff, who logged in from McLean, Virginia (actually, plaintiff logged in seven times). The other was an unidentified AOL user. However, our records show that user never downloaded any software, and never attempted to access any real-time functionality of AIDE.

18.    In summary, plaintiff is the only unauthorized user to ever successfully download software, log in to the portal, start a "meeting," and initiate use of potential collaboration tools. However, even the plaintiff was not able to start a collaborative session, because the AIDE site does not support this functionality for unregistered users, as discussed above.

19.    **Exhibits G, H, I** and **J** are submitted as further documentation. Exs. G, H and I are printouts of relevant sections of files contained in the AIDE backend database. Ex. G shows that guest accounts, like the one accessed by the plaintiff, are assigned the internal ID number "986." Ex. H shows the 7 virtual meeting sessions created by the plaintiff to produce his demo CDROM on February 13, 2003. Ex. I lists all virtual meeting sessions ever initiated by

---

[2]  One of the unsuccessful portal logins was attempted by a user from a network controlled by RCN Corp. in Lanham, MD on 11/25/2002. The user made a login attempt which was declined. The entire access sequence for the MD-based user is documented in Exhibit F. It can be seen that the user did not attempt a software download.

865605.1

users using a guest account, and shows that, other than the plaintiff, only one other user ever accessed the AIDE portal using a guest account and activated the potential collaboration tools. This user did so on August 30, 2002.  By cross-referencing database content with web server logs (Ex. J), we see that this other user was accessing the AIDE portal from NASA Langley in Hampton, VA.

20.    In short, only one "public" user has ever accessed the AIDE collaborative functionality, and that was the plaintiff himself.  Furthermore, plaintiff did not, and could not, collaborate because no unregistered user could access the site's real-time collaborative functionality regardless of his or her geographical location.

21.    Moreover, as has been shown, no user from Maryland (authorized or unauthorized) has ever either downloaded the software available from the AIDE website or accessed the AIDE portal, except perhaps the Court, who, according to our records, downloaded software but did not access the AIDE portal.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on March 3 , 2003.

Marek Podgorny

865605.1