# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ERIC HAMILTON | ) | |
| Plaintiff | ) | Civil Action No. |
| v. | ) | |
|  | ) | MJG 02-CV-2438 |
| COMWEB TECHNOLOGY GROUP, INC. | ) | |
| WEBEX COMMUNICATIONS, INC. | ) | |
| TERAGLOBAL COMMUNICATIONS CORP. | ) | |
| WEBWISDOM.COM, INC | ) | |
| Defendants | ) | |
|  | ) | |

## PLAINTIFF'S  PROPOSED CLAIM CONSTRUCTION STATEMENT

In accordance with part C. 3. of the Scheduling Order in the above captioned matter,

Plaintiff hereby submits Plaintiff's Proposed Claim Construction Statement.

Claim 1:

| | |
|---|---|
| A computer assisted electronic educational information communication system, comprising: | Any exchange of information is the education of the recipient by the provider of the information. An exchange of ideas (collaboration) is the education of all participants. |
| at least two stations; | needs no explanation |
| at least two monitor means, one associated with each of said stations, for displaying electronic educational information in visual form; | needs no explanation |
| at least two input means, one associated with each of said stations, for simultaneously and concurrently entering said information in handwritten freehand form from each of said stations and to display on at least its associated monitor means; and | "Simultaneously and concurrently entering" means that each user can enter information at his/her station at the same time as the other users enter information at their stations. The entry of information is independent.<br><br>Handwritten freehand form includes any freehand sketch tool, as opposed to a text tool or tool which selects fixed geometric elements. The tool can be implemented with a mouse, a pen, a digitizer pad, a touch screen, a stylus or any other freehand input device. |
| communication means for virtually simultaneously and concurrently transmitting said information being entered simultaneously and concurrently at either of said input means from either station to other station, and for enabling the virtually simultaneous and concurrent display of said transmitted information on both of said monitor means associated with both of said stations such that said information being entered at a first input means simultaneously and concurrently appears on all of said monitor means while under the independent control of said first input means. | The transmission is "virtually" simultaneous and concurrent. The virtual language means that the information does not have to appear on the other station at same the time as it is entered.<br><br>The display of information is also not simultaneous but "virtually" simultaneous. The information does not appear in the displays as it is entered. There is a delay to allow for accumulation and transmission. The information can be transmitted and displayed: after a set time delay such as updating every second; after the completion of a drawing stroke; or after entry of a segment of a drawing, such as each pixel or a group of pixels.<br><br>Each station has complete control of the information entered at that station. |

Claim 2:

| The system of claim 1, wherein one of said stations is adapted for an instructor and the other of said stations are adapted for students. | An instructor is the participant with control over the session in a collaboration system, often referred to as a presenter, moderator, host or administrator. |
|---|---|

Claim 3:        Not Asserted.

Claim 4:

| The system of claim 2, wherein said communication means selectively affords said instructor's station to selectively view said information displayed at said monitor means on any of said student's stations virtually simultaneously and concurrently to the time said information is being handwritten at said student's stations. | If the session is not peer-to-peer but is controlled by one participant, the controlling participant can selective view the other participant's screens. |
|---|---|

Claim 5:

| The system of claim 4, wherein said instructor's stations's monitor means is selectively controlled by the user implementing icons on said monitor. | need no explanation |
|---|---|

Claim 6:

| The system of claim 2, wherein said communication means selectively affords said instructor's station to virtually simultaneously and concurrently transmit said information being handwritten at said instructor's station to all of said monitor means at all of said students' stations. | The controlling participant can select which other participant's view the controller's screen. |
|---|---|

Claim 7:

| The system of claim 1, wherein said communication means includes a communication network, | This can be a LAN, a WAN, the Internet or the World Wide Web. |
|---|---|
| and further includes a central processing unit and bus interface, located at each of said stations, which is in data communication with said communication network. | need no explanation. |

**Claim 8:**

| | |
|---|---|
| The system of claim 1, wherein at least one of said input means includes a hand-held stylus for inputting free-style handwritten text and drawings. | needs no explanation. |

**Claim 9:**

| | |
|---|---|
| The system of claim 8, wherein said stations include more than two remotely-located stations, and wherein said input means include more than two input means for simultaneously and concurrently entering said handwritten information in freehand form from said more than two stations. | The collaboration system must allow sessions with at least three participants each with an input means such as a mouse. |

**Claim 10**

| | |
|---|---|
| The system of claim 1, wherein said communication means includes means for transmitting one pixel of said information being entered simultaneously and concurrently at either of said input means from either station to the other station on a pixel-by-pixel basis from alternating stations. | A narrow form of the broader recitation of information transmittal of Claim 1. In Claim 10 each pixel is transmitted after entry on a station. Claim 1 is broader, allowing for transmission of a group of pixels, such as a complete entry stroke or after an update time period. |

**Claim 11:**

| | |
|---|---|
| The system of claim 1, wherein said communication means includes means for enabling the display of one pixel of said information being entered simultaneously and concurrently at either of said input means from either station to the other station on a pixel-by pixel basis from alternating stations. | A narrow form of the broader recitation of information display of Claim 1. In Claim 10 each pixel is displayed on each station after entry on any station. Claim 1 is broader, allowing for display of pixels after grouping, such as a complete entry stroke or after an update time period. |

**Claim 12:**

| | |
|---|---|
| The system of claim 1, wherein said communication means includes means for queuing said information being simultaneously and concurrently transmitted from either station to the other station. | Queuing information is described in the specification as it is generally understood in the art, information is placed in a que for sending and receiving so that information is passed in an ordered manner. |

Claim 13:     Not Asserted.

Claim 14:     Not Asserted.

Claim 15:     Not Asserted.

Claim 16:     Not Asserted.

Claim 17:     Not Asserted.

Claim 18:     Not Asserted.

Claim 19:     Not Asserted.

Claim 20:     Not Asserted.

Claim 21:     Not Asserted.

Claim 22:     Not Asserted.

Claim 23:     Not Asserted.

Claim 24:     Not Asserted.

Claim 25:     Not Asserted.

Claim 26:     Not Asserted.

Claim 27:     Not Asserted.

Claim 28:     Not Asserted.

Claim 29:     Not Asserted.

Claim 30:     Not Asserted.

Claim 31:     Not Asserted.

Claim 32:     Not Asserted.

Claim 33:     Not Asserted.

Claim 34:     Not Asserted.

Claim 35:     Not Asserted.

Claim 36:     Not Asserted.

Claim 37:      Not Asserted.

Claim 38:      Not Asserted.

Claim 39:      Not Asserted.

(1)      Identification of any special or uncommon meanings or phrases in the claim

claim 1      "... input means ... for simultaneously and concurrently entering said information in handwritten freehand form..."   The use of simultaneously and concurrently means that each participant in a collaboration is able to enter information at his station at the same time that other participants are entering information at their respective stations.

"... virtually simultaneously and concurrently transmitting said information..."

"... the virtually simultaneous and concurrent display of said transmitted information on both of said monitor means associated with both of said stations such that said information being entered at a first input means simultaneously and concurrently appears on all of said monitor means while under the independent control of said first input means."

claim 24      "... interactive monitor means ... for simultaneously and concurrently displaying instructional information ... and for simultaneously and concurrently accepting handwritten instructional information inputted from the user of that station ..."

"... simultaneously and concurrently communicating said inputted and displayed instructional information between said interactive monitor means of all of said stations, said network communication means controlled by said instructor station controlling means to selectively and simultaneously and concurrently display instructional information input and displayed at said instructor's station on said interactive monitor means of any of said student stations virtually simultaneously and concurrently and without interfering with the control of inputted instructional information being accepted from the user of that student station."

(2)    References from the specification:

Background of the Invention:

Column 1, Line 24:
"...three critical differences distinguish such systems from the present invention. First, such prior systems always require a basic platform application... Second, ... Two users may simultaneously control the application. Third, ... free hand writing or drawing to simulate paper and pencil..."

Summary Of The Invention:

Column 2, line 29:
"both teacher and student write on the same "sheet" virtually simultaneously from different parts of the same room."

Detailed Description:

Column 8, line 60:
"If the (local or remote) user is instead continuously pressing the pen in a writing area (317), a line is drawn to connect the location of that depression with the most previous one (318). (These "lines" are extremely short, and give the appearance of smooth, continuous drawing or writing.)"

Column 12, line 47:
If the command field requests a copy of the screen...a large transmission of a window takes place... if either a student of teacher receives a full copy of a remote screen, a packet is sent with the SCREEN_COPY value in the command field...

Column 13, line 22
When an ABS is received ... the user at the sending [remote] station has just pressed the pen to the sensor ... and the absolute coordinates of the touchdown are recorded so that ... a connection can be made between the point at these absolute coordinates and the point at the coordinates where the next interrupt is issued by the pen's serial interface at the remote station. At that next interrupt, a new PACKET is sent by the remote station, with the command field set to REL ... and the relative position from the last touch down or drawing interrupt (whichever is more recent) is included in the packet. A line is drawn from the point at the last pair of coordinates to the point at this new set of coordinates.

Column 14, line 13:
If a mouse rather than a pen is the input device and if the ...

Column 14, line 60:
> Similarly, if the user is in a drawing or erasure mode (611), the line is drawn or erasure effected (with a white fillbar)(614). An evaluation of whether the communication is being shared with the teacher (616) (if this is a student situation) or with other students (618)(if this is a teacher situation) results in those coordinates with destination being sent (if a mouse rather than a pen is used) to the aforementioned sent_pt function (617 and 19), which prepares them for transmission to the appropriate destination via the send_que function...

Column 16, line 1:
> ...followed by a determination of whether the input device is a mouse or a pen (803) Thus, the implementation may be reconstructed using a mouse instead of a pen. When the pen is used (853B), the mouse is disabled (821).

Column 16, line 32:
> The "click areas" that define what events occur when a given spot on the screen is touched by the pen (or mouse, when a button is depressed) are then initialized...

Claims:

Narrow dependant claims recite limitations which distinguish over the broad language in the broader claims (doctrine of claims differentiation):

Claim 8:
> "a hand-held stylus"

Claim 10:
> "transmitting one pixel ... on a pixel-by-pixel basis..."

Claim 11:
> "display of one pixel ... on a pixel-by-pixel basis..."

Claim 13:
> "input ... by a user drawing or writing directly on said display surface..."

Claim 13:
> "simultaneously and concurrently communicating said information in real time..."

Claim 17:
> "a user controlled hand-held stylus, stylus sensor, and stylus interface..."

Claim 18:
> "simultaneously and concurrently displayed..."

Claim 23:
> "simultaneously and concurrently communicating one pixel of said information in real time ... on an alternating-station pixel-by-pixel basis..."

Claim 24:
"interactive monitor..."

"simultaneously and concurrently communicating ..."

"simultaneously and concurrently display..."

Claim 25:
"a user controlled freehand writing stylus, ... stylus sensor ..."

Claim 28:
"simultaneously and concurrently communicated and interactively shared in real time..."

Claim 29:
"in a pixel-by-pixel format..."

(3)    Material in the prosecution history:

A -    Original claims.

B -    Office Action February 5, 1991.

C -    Entire Amendment August 12, 1991, including specific amendments to the claims and the description of virtually simultaneous as "...both computers connected to the same monitor at the same time..." to distinguish over Shapiro which required that "the student's computer must be disconnected from the instructor's monitor..."  Simultaneous and concurrent refers to the continuous connection, not the immediate transfer of data on a pixel-by-pixel basis.

D -    Examiner's Action of February 20, 1992.

E -    Proposed Amendment B, March 19, 1992.

F -    Amendment B after final rejection, May 20 1992.

G -    Third Interview Summary Record, August 24, 1992.

H -    The prior art of record.

(4)    Extrinsic evidence

Plaintiff reserves the right to supplement this material with documents and/or

other evidence, including expert testimony and/or party testimony, gathered in discovery which is

currently ongoing.

Plaintiff intends to rely upon extrinsic evidence currently available which includes the

materials describing the products of Defendants WebEx and Teraglobal/Wave Three.

For example:

WebEx Glossary http://www.webex.com/glossary.html: "Whiteboard - This is analogous to an actual whiteboard in a meeting room. Instructors and students can simultaneously mark and write on the whiteboard to share information. There must be tools to draw straight and free-hand lines, circles, ovals, rectangles and type words."

Teramedia Demo 6.2 User Guide, page 1: "Virtual Whiteboard - Teramedia whiteboard is a real time collaboration tool that allows any number of individuals to share and manipulate any type of media simultaneously in real-time."

Teramedia Demo 6.2 User Guide, page 18: "The pen allow you to draw freehand on the Virtual Whiteboard workspace."

Wave Three - Session Workspace User Guide, page 1: "...you can use a variety of tools to draw freehand and correspond via a 'virtual whiteboard' environment."

Respectfully Submitted,

Joseph J. Zito,  5640
26005 Ridge Road
Suite 203
Damascus, Maryland 20872
(301) 601-5010

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing PLAINTIFF'S PROPOSED CLAIM CONSTRUCTION was served via Facsimile, e-mail and First Class Mail to the counsel designated below, this 7th day of January 2003:

For: Webex    Russell L. Johnson
         Bryan K. Anderson
         Elizabeth R. Potts
         SKJERVEN MORRILL LLP
         Suite 700, 25 Metro Drive
         San Jose, California 95110
         (408) 453-7979 facsimile
         rjohnson@skjerven.com

For: Teraglobal/Wave Three:
         Jonathan E. Jobe, Jr.
         PILLSBURY WINTHROP
         11682 El Camino Real Suite 200
         San Diego, CA 92130-2092
         (858) 509-4010 facsimile
         jjobe@pillsburywinthrop.com

For: Webwisdom   Louis Orbach, Esq.
         Maria Gerace, Esq.
         BOND SCHOENECK & KING, PLLC
         One Lincoln Center
         Syracuse, NY 13202-1355
         (315) 422-3598 FAX
         lorbach@bsk.com

Joseph J. Zito