```
            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
```

ERIC HAMILTON                            *

      Plaintiff              *

  vs.                          *CIVIL ACTION NO. MJG-02-2438

                                 *

COMWEB TECHNOLOGY GROUP, et.al.

      Defendants             *

\*    \*    \*    \*    \*    \*    \*    \*    \*

<u>MEMORANDUM AND ORDER</u>

The Court has before it Defendant WebWisdom's Motion to Dismiss and the materials submitted to the Court pertaining thereto. The Court has held a hearing on the instant Motions and has had the benefit of the arguments of counsel.

I.   <u>BACKGROUND</u>

Plaintiff Eric Hamilton ("Plaintiff" or "Hamilton") is the owner of United States Patent Number 5,176,520 ("the 520 Patent"), which discloses a "Computer Assisted Instructional Delivery System and Method." In general terms, which suffice for purposes of the instant Motion, the invention relates to a system whereby persons at two or more computer monitors can effectively share a common blackboard (to use traditional terminology). For example, a teacher and a student at separate stations with separate monitors can each "draw" on

the common blackboard so that the teacher can see the student's drawing and the student can see the teacher's. Where there are several students, the teacher can selectively interact with each student or can provide the same information to all students.  Putting aside for instant purposes issues of claim construction,[1] the disclosed type of system could also be utilized in such contexts as product design, document drafting, and others in which it is beneficial for two or more persons to effectively draw or write on the same "paper" while providing input from separate stations or physical locations.

WebWisdom provides to its licensees a type of program commonly known as "virtual meeting" software, wherein parties in different locations can "share" common content on their respective monitors.  The program offered by WebWisdom is designed to be customized for each individual client or licensee. The program contains "modules" for different types of communication or collaboration - for example, audio collaboration, video collaboration, or "shared" Internet browsing.  The alleged infringing product produced and licensed by WebWisdom consists of one such module made available to licensees - what WebWisdom calls a "whiteboard" program – wherein users can collaborate by placing content on

---

[1]   To be addressed is a separate Claim Construction to be issued in the future.

2

a shared screen.

Webwisdom, based in Ithaca, New York,[2] has had contact with Maryland only by virtue of the fact that its Internet website is available to residents of Maryland.  Of course the website is equally available to residents of every other state.  WebWisdom seeks dismissal for want of personal jurisdiction.

II.  LEGAL STANDARD

   A.   Applicable Law

   In a patent case, the law of the forum state applies to analyses of that state's long-arm statute.  However, the Federal Circuit has decided that its interpretation of federal jurisdictional principles applies to determinations as to whether the exercise of personal jurisdiction over a particular defendant comports with the requirements of federal due process.[3]  3D Sys. Inc., v. Aarotech Laboratories, Inc., 160 F.3d 1373, 1377-78 (Fed. Cir. 1998), see also HollyAnne

---

   [2]   WebWisdom has offices, albeit small ones, outside of Ithaca, but none in Maryland.

   [3]   This Court would suggest that the Federal Circuit reconsider its position.  Although the matter is academic in the instant case, theoretically, a district court, faced with conflicting Federal and regional circuit decisions, could find itself asserting personal jurisdiction over a defendant in a patent case while not asserting personal jurisdiction over the same defendant in other cases or vice versa.

Corp. v. TFT, Inc., 199 F.3d 1304, 1307 (Fed. Cir. 1999).

This Court's determination of the exercise of personal jurisdiction over Defendant is a two-step process. First, the Court must determine whether the state's long-arm statute authorizes jurisdiction.[4]  Second, the Court must determine whether the exercise of jurisdiction, if authorized by the statute, is consistent with the due process requirements of the Fourteenth Amendment.  See Mohamed v. Michael, 279 Md. 653, 657 (1977).

The Court must look to Maryland law to determine whether the long-arm statute confers jurisdiction and to federal (Federal Circuit) law to determine whether the exercise of personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment.  See Snyder v. Hampton Indus., Inc., 521 F.Supp. 130, 135 (D. Md. 1981), aff'd, 758 F.2d 649 (4th Cir. 1985).

---

[4]  Maryland's long-arm statute provides, in pertinent part:

(b)  In general -- A court may exercise personal jurisdiction over a person, who directly or by an agent:

   (4)  Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state; . . . .

Md. Code Ann., Cts. & Jud. Proc. §6-103 (1991).

B.   Legal Standards on Jurisdictional Questions

The relevant section of the Maryland long-arm statute expands the exercise of personal jurisdiction to the limits allowed by the Due Process Clause of the Fourteenth Amendment. See Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). The normal two-step analysis merges into one and thus, this Court must examine whether the exercise of personal jurisdiction is consistent with due process. See Ellicott Mach. Corp., 995 F.2d at 477.

A distinction must be drawn between specific jurisdiction and general jurisdiction. See, e.g., Bass v. Energy Transp. Corp., 787 F.Supp. 530, 534 (D. Md. 1992). When a court seeks to exercise specific jurisdiction, the cause of action must arise out of defendant's minimum contacts with the forum. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The Federal Circuit has defined specific jurisdiction as arising where "a non-resident defendant purposefully establishes minimum contacts with the forum state, the cause of action arises out of those contacts, and jurisdiction is constitutionally reasonable. 3D Systems, 160 F.3d at 1377. When the cause of action is unrelated to the defendant's contacts with the forum state, the court may exercise general jurisdiction upon a showing that the defendant's contacts are of a continuous and systematic

nature.

The Federal Circuit's due process analysis for personal jurisdiction purposes is governed by the three-part test elucidated in <u>Akro Corp. v. Luker</u> 45 F.3d 1541 (Fed. Cir. 1995), which requires the analysis of the following factors:

1. Whether the defendant purposefully directed its activities at residents of the forum;

2. Whether the claim arises out of or relates to those activities; and

3. Whether assertion of personal jurisdiction is reasonable and fair.

<u>Id</u>. at 1545-46, <u>citing</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462 (1985).


III.    <u>DISCUSSION</u>

Plaintiff contends that WebWisdom purposefully directed its activities at residents of Maryland because, through its website, it:

1. Offered to sell the alleged infringing product to Maryland residents; and

2. Provided infringing sample software for download to Maryland residents.

The Court shall consider Plaintiff's arguments under <u>Akro</u> in turn.


B.    <u>"Offers to Sell"</u>

Under the Patent Statute, 35 U.S.C. §271(a), "offers to

6

sell" are among the actions by a purported infringer that constitute acts of infringement of a patent. The "offers to sell" component of §271(a) was added to the statute in 1994. The Federal Circuit has only recently had the opportunity to rule on the types of acts that would be considered "offers to sell" under the statute.

In 3D Systems, supra, the Federal Circuit held that a letter quoting prices for the infringing product that were sent into California constituted "offers to sell" within the meaning of the statute, even when the letters stated that they did not constitute offers to sell. The Federal Circuit stated that "[o]ne of the purposes of adding 'offer[] to sell' to 271(a) was to prevent the very activity [the defendant] has engaged in, i.e., generating interest in a potential infringing product to the commercial detriment of the rightful patentee." 3D Systems, 160 F.3d at 1379.

However, in Rotec, supra, the Federal Circuit, while citing 3D Systems with approval regarding the policy aims of the "offers to sell" provision, emphasized that the "offers to sell" provision could not be extended to reach all activity that could "generate interest" in the infringing product. Such an interpretation, the Court ruled, would "go far beyond the limited right to exclude provided by 271(a)." Rotec, 213 F.3d at 1255. The Federal Circuit stated that the term

7

"offers to sell" "should be interpreted according to its ordinary meaning in contract law, as revealed by traditional sources of authority.  <u>Id.</u>  The Court shall, therefore, determine whether WebWisdom's website can be considered an offer to sell under general contract principles.

As a general rule of contract construction, a mere advertisement for a product does not constitute an "offer" to sell that product.  <u>See</u> <u>Chicago Joint Bd. v. Chicago Tribune Co.</u>, 307 F.Supp. 422,424 (N.D. Ill. 1969), <u>citing</u> 1 Corbin, Contracts §25, at 75 (1963).  Even if the a specific price is quoted, or an order form provided, an advertisement that is aimed at the general public is not an "offer" in a contractual sense.  <u>See</u> <u>Mesaros v. United States</u>, 845 F.2d 1576, 1580-81 (Fed. Cir. 1988), <u>Arnold Pontiac-GMC v. General Motors Corp.</u>, 786 F.2d 564, 571-72 (3rd Cir. 1986).

WebWisdom's site presents a description of its products, including the allegedly infringing product, along with some samples of the software that are available for download in a non-customized form.  A visitor to its website may review details of the products including a "demo," and there is information through which the visitor may contact WebWisdom for further information, or, presumably, to arrange a sale or license for the software.  There are no price quotes on the site, nor anything that could be perceived as an "order form."

8

A prospective purchaser cannot literally, or effectively, simply communicate acceptance of an "offer" and thus enter into a contract to buy the product.

The Court concludes that WebWisdom has not made "offers to sell" allegedly infringing products to Maryland residents within the meaning of 35 U.S.C. §271(a). Accordingly, Plaintiff cannot obtain personal jurisdiction on the basis of "offers to sell" alleged infringing products in Maryland.

### C. Downloading of Noncustomized Sample Software

Plaintiff argues that because WebWisdom offers sample software on its site, a download of the material in Maryland constitutes an act of infringement in Maryland. Therefore, the provision of such sample materials is sufficient to confer jurisdiction over WebWisdom in this Court.

WebWisdom does not dispute that some components of its collaborative software are available for download and "sampling" by Maryland customers. However, the particular module of its system that purportedly infringes the '520 Patent (the "whiteboard" module) is not available for sampling.

Plaintiff, in Maryland, was able to download and sample some of the WebWisdom's product. However, none of the modules sampled by Plaintiff and submitted to the Court contained the

9

allegedly infringing content. Plaintiff sampled a module providing "shared browser" capability, wherein two remote users can "browse" the Internet together and conduct a "chat" online regarding the content. Nevertheless, that module does not allow the users to actually interact with and manipulate the data appearing on the monitor, as required by Plaintiff's invention.

The disputed "whiteboard" functionality is described on WebWisdom's site as part of its "virtual classroom" program, consisting of "[a] selection of whiteboards, from a simple quick draw to an advanced layered whiteboard with import/export and data save capabilities." No link to a sample of the product or any demonstration of its function is provided. The only reference to the program is the brief text description.

Plaintiff has not established that WebWisdom provided any alleged infringing software for download by Maryland residents. Accordingly, personal jurisdiction cannot be imposed by virtue of any provision of such software by WebWisdom.

Finally, Plaintiff contends that two licensees of WebWisdom have provided alleged infringing software for download by Maryland residents. Plaintiff relies upon a

website maintained by the AIDE project[5], a collaborative program operated by NASA and Cornell University, both WebWisdom licensees.

A visitor to the AIDE project website can view a non-active "freeze-frame" window showing what a whiteboard frame or "window" might look like.  However, actual use or interaction with the whiteboard feature on the AIDE website requires the user to have a password.

It is theoretically possible that the NASA and Cornell AIDE project websites might provide a user who is password enabled access to the actual whiteboard feature and thus utilize allegedly infringing software.  However, such access is available only to "registered users," a group that may or may not include Maryland residents. More specifically, the access to the alleged infringing software on the AIDE project website is provided by Cornell and NASA, not by WebWisdom. Hence the AIDE website, even if its activities were sufficient to meet the first prong of the <u>Akro</u> test, would potentially provide jurisdiction for a claim against Cornell and NASA but

---

[5]   Though WebWisdom's own website describes the AIDE program, it does not provide a link to the AIDE site allegedly containing the downloads.

not WebWisdom.[6]

In sum, WebWisdom has not provided allegedly infringing software for download in Maryland.  Therefore, there is no activity purposefully directed at residents of Maryland that would satisfy the first prong of the <u>Akro</u> test.

## VI. <u>CONCLUSION</u>

For the foregoing reasons:

1. Defendant WebWisdom's Motion to Dismiss is GRANTED.

2. All claims against Defendant WebWisdom are dismissed for lack of personal jurisdiction.

SO ORDERED, on <u>Monday 16 June, 2003</u>.

_____/ s /_____<br>
Marvin J. Garbis<br>
United States District Judge

---

[6] Plaintiff has not sought to sue WebWisdom as a contributing infringer with NASA and Cornell.  Therefore, the Court need not reach the issues that would be presented should Plaintiff have made such a claim.