**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**ERIC HAMILTON** *

**Plaintiff** *

**vs.** * **CIVIL ACTION NO. MJG-02-2438**

**COMWEB TECHNOLOGY GROUP, INC., et al.** *

*

**Defendants**

* * * * * * * * *

**MEMORANDUM AND ORDER**
**RE PATENT CLAIM CONSTRUCTION**

In this case, Plaintiff sues Defendants for infringement of Independent Claim 1 and certain claims depending therefrom of U.S. Patent Number 5,176,520 ("the 520 Patent"). Pursuant to the Scheduling Order, the parties have filed materials relating to what they have identified as claim construction issues. The Court has held a hearing regarding claim construction issues and has had the benefit of the arguments of counsel.

## I. GENERAL PRINCIPLES

The construction of patent claims is a matter for the court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 390 (1996). In the process of claim construction, the focus is upon what a person of ordinary skill in the pertinent art would have understood to be the meaning of the claim language.

Markman v. Westview Instruments, Inc., 52 F.3d 967, 986 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). The court must first look at the basic evidence of record, namely, the language of the claim, the specification, and the prosecution history. Insituform Tech., Inc. v. Cat Contracting, Inc., 99 F.3d 1098, 1105 (Fed. Cir. 1996), cert. denied 520 U.S. 1198 (1997). The claim language itself defines the scope of the claim. Therefore, "a construing court does not accord the specification, prosecution history, and other relevant evidence the same weight as the claims themselves, but consults these sources to give the necessary context to the claim language." Eastman Kodak Co. v. Goodyear Tire & Rubber Co., 114 F.3d 1547, 1552 (Fed. Cir. 1997) overruled on other grounds by Cybor Corp. v. FAS Tech., Inc. 138 F.3d 1448 (Fed. Cir. 1998) (en banc).

The Court of Appeals for the Federal Circuit has held that claims should be read in view of the specification. See, e.g., id. However, the Federal Circuit cautions against limiting the scope of a claim to the preferred embodiment or specific examples disclosed in the specification. See, e.g., Ekchian v. Home Depot, Inc., 104 F.3d 1299, 1303 (Fed. Cir. 1997); see also Intervet Am., Inc. v. Kee-Vet Lab., Inc., 887 F.2d 1050, 1053 (Fed. Cir. 1989) ("[L]imitations appearing in

the specification will not be read into claims, and . . . interpreting what is meant by a word in a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'") (citation omitted).

## II. DISCUSSION

### A. The Patent and Claim at Issue

The '520 Patent discloses a "Computer Assisted Instructional Delivery System and Method." In general terms, the invention relates to a system whereby persons at two or more computer monitors can effectively share a common "whiteboard." For example, a teacher and a student at separate stations with separate monitors can each "draw or write" on a common whiteboard so that the teacher can see and edit a student's drawing or writing and the student can see the teacher's edits. Where there are several students, the teacher can selectively interact with each student or can provide the same information to all students.

The disclosed type of system could also be utilized in such contexts as product design, document drafting, and others in which it is beneficial for two or more persons to effectively draw or write on the same "paper" while providing input from separate stations or physical locations.

The Court understands, based upon the parties' submissions and statements at the claim construction hearing, that certain of the claim terms require judicial construction. Accordingly, the instant discussion relates to those terms. The parties shall be given the opportunity to request construction of additional terms if necessary.

The following discussion pertains to the following claims and indicated terms:

Claim 1

A computer assisted electronic **educational information** communication system, comprising:

at least two **stations**

at least two **monitor means**, one associated with each of said stations, for displaying electronic **educational information** in visual form;

at least two **input means**, one associated with each of said stations **for** simultaneously and concurrently **entering said information in handwritten freehand form** from each of said stations and to display on at least its associated monitor means; and

communication means for **virtually simultaneously and concurrently** transmitting said information being entered **simultaneously and concurrently** at either of said input means from either station to other station, and for enabling the virtually simultaneous and concurrent display of said transmitted information on both of

said monitor means associated with both of said stations such that said information being entered at a first input means simultaneously and concurrently appears on all of said monitor means while under the independent control of said first input means.

**Claim 2**

The system of claim 1, wherein one of said stations is **adapted for an instructor** and the other of said stations are **adapted for students**.

**Claim 8**

The system of claim 1, wherein at least one of said input means includes a hand-held **stylus** for inputting free-style handwritten text and drawings.

**Claim 9**

The system of claim 8, wherein said stations include more than two **remotely-located** stations, and wherein said input means include more than two input means for simultaneously and concurrently entering said handwritten information in freehand form from said more than two stations.

**Claim 12**

The system of claim 1, wherein said communication means includes means for **queuing** said information being entered simultaneously and concurrently transmitted from either station to the other station.

**B. Construction of the Claim Language**

**The Court is, herein, providing its construction of the claim language. Thus, the Court is setting forth the interpretation of claim language that will be applied in the infringement analysis. The Court is not now addressing infringement issues per se nor considering any potential doctrine of equivalents issues.**

**1. Educational Information**

**The term "educational information"[1] is used in the preamble of Claim 1 to set forth the intended use of the invention claimed. The term is also used in the recitation of the claim elements expressly and by the use of "said information." Accordingly, the term, in particular the word "education" as a modifier of "information," is part of the claim elements defining the invention. Compare Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 868 (Fed. Cir. 1985) overruled on other grounds by Nobelpherma AB v. Implant Innovations, Inc., 141 F.3d 1059 (Fed. Cir. 1998). In other words, the word "educational" modifies "information" so that**

**[1] For some reason, the examiner substituted "educational" for "instructional" and the patentee accepted the change (Tr. 19) All references to "Tr." herein are to the transcript of the claim construction hearing held on June 9, 2003.**

the claim does not reach all information but, rather, that subset of information that is "educational."

The claim refers to "educational information" as being entered, transmitted and displayed.[2] Inasmuch as the word "educational" cannot be read out of the claim, it necessarily follows that information that can be entered, transmitted and displayed could be educational or could be non-educational. Information, per se, has no inherent character as educational or non-educational. The characterization necessarily is determined by the context in which the information is entered, transmitted and displayed.

It may well be the case that all, or virtually all, conceivable information could be entered, transmitted and displayed in an educational context. For example, this very paragraph could be considered "educational information" if entered, transmitted and displayed in a course on how to, or perhaps how not to, write a good claim construction decision. On the other hand, the information in this paragraph cannot realistically be viewed as "educational" in its current context as part of a judicial claim construction decision that informs the parties of the Court's opinion. Thus, the Court

---

[2] The claim also states that the information "appears on" monitors which is the same as its being "displayed."

**rejects Plaintiff's contentions that any communication that <u>informs</u>, necessarily <u>educates</u>, so that any witness would be considered to be "educating" a judge and jury[3] (Tr. 36), a lawyer communicating a settlement offer would be deemed to be "teaching" opposing counsel the amount which the client will accept to settle a case, (Tr. 29) etc.**

**A clear, but not exclusive, illustration of an educational context is provided in the '520 Patent itself. A student in a classroom[4] can enter information (such as text or a drawing) which is displayed on the student's and teacher's monitor, the teacher can add information (text or nontextual markings), which is displayed on the student's and the teacher's monitors. The information that is thus being entered, transmitted and displayed would be "educational information" as the term is used in Claim 1.**

**Examples of situations in which information was being entered, transmitted and displayed in a context in which there is no teacher/student or student/teacher relationship would include lawyers negotiating by marking up a contract draft, a buyer and seller collaborating on the design of an item (e.g.**

---

**[3] It is, of course, conceivable that an expert witness in certain situations could be viewed as "educating" the judge and jury.**

**[4] Physical or virtual for that matter.**

a cake, a label, a microchip) etc. In such contexts the persons sharing a common whiteboard would not be entering, transmitting and displaying "educational information" as that term is used in Claim 1.

Of course, there may be factual issues as to whether information in particular contexts is, or is not, "educational" as that term is used in Claim 1. Thus, a fact finder might find that a company's display of a picture of a new product to its sales force who could respond by marking the picture would be educational and yet find that the company's display of the same picture to a customer who could place an order by marking the picture would not be.

The Court notes that it appears unlikely that there will be any material issue turning on the precise definition of "educational information." The '520 Patent makes claims for a system which has the capacity to facilitate two or more persons in the entry, transmission and display of "educational information." If a particular accused system can facilitate the entry, transmission and display of educational information, the fact that it may be able to do so for non-

**educational information as well does not appear to be of particular significance.[5]**

**The Court concludes that "educational information" shall be construed to mean information that is entered, transmitted and displayed in a context in which there is a teacher/student or student/teacher relationship between a person who enters and transmits the information and a person who views the shared display of the information.**

**2. Virtually Simultaneously and Concurrently**

**Claim 1 refers to information being "simultaneously and concurrently" entered by two persons sharing a common display at their respective stations. This means that a person at one station can enter information for display at both stations at the precisely identical time that a person at another station is entering information for display of both stations (Tr. 40-43).**

**Claim 1 refers to information being "virtually" rather than precisely simultaneously and concurrently" transmitted because, necessarily, the transmission of data from one station to another cannot be absolutely instantaneous. In**

**[5] Of course, the Court is not now deciding anything beyond claim construction and will give the parties an opportunity to present their respective positions as to all issues.**

context, the term "virtually simultaneously and concurrently" means that the transmission is sufficiently swift that insofar as humans are able to perceive, the transmission is effectively, even though not precisely, instantaneous (Tr. 43).

3. Station

Claim 1 refers to a system comprising "at least two stations." The word "station", in context, means a location at which there is a monitor, input and transmission means. This would include, for example, a desk or table[6] on which a person would have a computer input device and monitor connected to the system even if the "computer" or central processing unit itself were not at the same location.

4. Monitor Means

In Claim 1, the term "monitor means" refers to any computer monitor (Tr. 46). The term is not limited to the precise type of monitor (one built into a desk or table top) shown in the '520 Patent.

---

[6] Or anything else for that matter, so that even if the computer input device and monitor were on the floor of an unfurnished room, that room would be a "station" within the meaning of the claim language.

### 5. Input Means for Entering Information in Handwritten Freehand Form

In Claim 1 the phrase "entering in handwritten freehand form" refers to the entering of information by a means that can reproduce the path of movement of a person's hand unrestricted by a device that guides the hand to move in a predetermined pattern.

The Court is not now deciding whether any particular input means does, or does not, meet the aforesaid definition. The parties remain to argue whether Claim 1, as herein construed, reads on a mouse, a glove or anything else for that matter.

### 6. Instructor and Student Stations

Claim 2 claims:

> The system of claim 1, wherein one of said stations is adapted for an instructor and the other of said stations are adapted for students.

Claim 2 refers to a system in which one station (the instructor's) is different from the other station or stations (the students') in a manner facilitating the instructor/student relationship (Tr. 70). The parties did not present arguments as to the nature of the difference between the instructor's and students' stations. If, unlikely though

it seems, this matter is material it will be necessary to provide a further construction. At present – although the matter has not been adequately argued and, therefore, is not being decided – it appears that an instructor's station would permit unrestricted interaction with each student while a student's station would be restricted with regard to interactions with other students.

7. Claim 8 - Stylus

The term "stylus" in Claim 8 refers to an object generally shaped like a pencil with a tip that is narrower than the body. (Tr. 72).

8. Claim 9 - "Remotely Located"

In Claim 9 the reference to more than two stations that are "remotely-located" means that there are more than two stations that use different central processing units. (Tr. 75-76). Thus, two stations in the same physical room, each served by a different CPU, would be "remotely located" while two stations in two different cities using a common CPU (wherever the CPU might be located) would not be.

9. Claim 12 - "Queuing"

In Claim 12, the word "queuing" means placing data into a structure in which items are removed in a first in, first out (FIFO) manner (Tr. 79 ).

## III. CONCLUSION

For the foregoing reasons, the Court concludes the following with regard to the construction of the claim terms placed at issue:

1. The term "educational information" is construed as meaning information that is entered, transmitted and displayed in a context in which there is a teacher/student or student/teacher relationship between a person who enters and transmits the information and a person who views the shared display of the information.

2. Reference to information being entered at two stations "simultaneously and concurrently" in Claim 1 means being entered at the precisely identical time.

3. Reference to information being transmitted "virtually simultaneously and concurrently" means that the transmission is sufficiently swift that, insofar as humans are able to perceive, the transmission is effectively, even though not precisely, instantaneous.

4. The word "station" in Claim 1 means a location at which there is a monitor, input and transmission means.

5. The term "monitor means" in Claim 1 refers to any computer monitor.

6. The words "entering in handwritten freehand form" in Claim 1 refers to the entering of information by a means that reproduces the path of movement of a person's hand unrestricted by a device that guides the hand to move in a predetermined pattern.

7. The Claim 2 reference to a system in which one station is adapted for an instructor and the other for a student means that one station (the instructor's) is different from the other station or stations (the students') in a manner facilitating the instructor/student relationship.

8. The term "stylus" in Claim 8 refers to an object generally shaped like a pencil with a tip that is narrower than the body.

9. The Claim 9 reference to more than two stations that are "remotely-located" means that there are more than two stations that use different central processing units.

10. The word "queuing" in Claim 12 means placing data into a structure in which items are removed in a first in, first out (FIFO) manner.

11. By November 25, 2003 Plaintiff's counsel shall arrange a telephone conference with Chambers to discuss the scheduling of further proceedings herein.

SO ORDERED, on Thursday, November 13, 2003.

/ s /
Marvin J. Garbis
United States District Judge